IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BLACKROCK, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>3BLACKROCK.COM and 43 additional Internet Domain Names,<br><br>    Defendants. | Civil Action No. 1:23-cv-1375 (AJT/WEF) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ORDER TO PUBLISH NOTICE OF ACTION**

Plaintiff BlackRock, Inc. ("BlackRock" or "Plaintiff"), by counsel, submits this Memorandum in Support of its Motion for an order to publish notice of this *in rem* action regarding the Internet domain names identified as Defendants in the Complaint (the "Defendant Domain Names").

I.  **FACTUAL BACKGROUND**

    A.  **Plaintiff BlackRock, Inc.**

Plaintiff BlackRock, Inc. is a publicly traded Fortune 500 company, incorporated in Delaware and based in New York City. Compl. ¶¶ 5, 57. BlackRock was founded in 1988 as an asset management firm. *Id.* ¶ 56. It has since grown into the world's largest publicly traded investment management firm, with over 19,000 employees in more than 36 countries, and approximately $9 trillion in assets under its management. *Id.* BlackRock's clients range from private consumers to large financial entities, and include governments, companies, foundations, and millions of individuals. *Id.* ¶ 58.

Since its founding, BlackRock has continuously used the mark BLACKROCK to promote its services, including its investment, advisory, and risk management services. *Id*. Its use of the mark includes incorporation into the names of numerous subsidiary companies, as well as the names of many of BlackRock's well-known funds. *Id.* ¶¶ 57, 59.  BlackRock also uses the mark in its BLACKROCK.com domain name, which it first registered in 1997, and which it has used continuously since then to host a website promoting BlackRock's services. *Id.* ¶ 63.

The BLACKROCK mark has a premier presence in the financial industry. *Id.* ¶ 61. BLACKROCK is referenced extensively throughout public company resources, trading outlets, U.S. stock exchanges, and regulatory authority databases, e.g., the Securities and Exchange Commission, Financial Industry Regulatory Authority. *Id.* BlackRock is frequently featured in major news outlets, which has furthered the worldwide reputation of the BLACKROCK mark as a single authority and source of market information across a variety of industry sectors. *Id.*

In addition to its longstanding use of BLACKROCK for its broad goods and services, BlackRock has consistently used other marks as source indicators for more specific goods and services. *Id.* ¶ 71. One such mark is ALADDIN. Since at least 1996, BlackRock has consistently used the mark ALADDIN to market financial services and computer software facilitating those services. *Id.* ¶ 72. The ALADDIN services are featured prominently on BlackRock's website, and have a dedicated subpage at BlackRock.com/Aladdin. *Id.* At present, the ALADDIN services are used by approximately 55,000 investment professionals worldwide. *Id.* The ALADDIN mark and services thereunder have received significant publicity, including numerous high-profile industry awards. *Id.* ¶ 73.

Another mark BlackRock uses to identify its goods and services is BLK. BlackRock has used the BLK mark continuously in commerce since at least 2012, as its stock symbol, to

promote its general financial services, and to promote BlackRock's mobile applications specifically. *Id.* ¶ 76.

Based on its longstanding, extensive, and continuous use of the marks BLACKROCK, ALADDIN, and BLK (the "BlackRock Marks"), the marks have become associated with BlackRock's services and the significant goodwill BlackRock has achieved. As a result, BlackRock is entitled to broad common law trademark rights in the BlackRock Marks.

In addition to its common law trademark rights, BlackRock has acquired statutory trademark rights in each of the BlackRock Marks through registrations with the U.S. Patent and Trademark Office. *Id.* ¶¶ 69, 74, 77; Exs. 45-47. These registrations constitute *prima facie* evidence of the validity of the BlackRock Marks. BlackRock's Reg. Nos. 2417737, 2645470, 3425495, 3544707, 3592375, and 5160061 have achieved incontestable status, which renders them *conclusive* evidence of the validity of the marks, of BlackRock's ownership of the marks, and of BlackRock's exclusive right to use the marks in U.S. commerce. *Id.* ¶ 70.

### B. The Infringing Domains

As a respected financial services institution, BlackRock has been consistently targeted by malicious actors seeking to take advantage of the public's trust in BlackRock. *Id.* ¶ 66. Indeed, this is not the first anti-cybersquatting case that BlackRock has been forced to bring to protect its valuable rights. *Id.*; *BlackRock, Inc. v. Balckrock,.com et al.*, No. 1:22-cv-1002-TSE-JFA (E.D. Va. Sept. 6, 2022). The Defendant Domain Names in this action are further instances of the consistent attacks BlackRock faces, posing risk not only to BlackRock's goodwill and the value of its intellectual property, but also to the public of being misled and deceived.

Each of the Defendant Domain Names either incorporates one or more of the BlackRock Marks in their entireties, or employs common typos thereof (e.g., BLAXKROCK). *Id.* ¶¶ 6-49,

3

80. Many of the domain names seek to reinforce the association with BlackRock by also including terms that relate to BlackRock, including additions of descriptive terms relating to BlackRock's services (e.g., "bank," "lending," "capital," "finances," "investment") and references to BlackRock's joint venture partners. *Id*. The result are domain names that consumers will immediately, yet erroneously, associate with BlackRock and its services.

The Defendant Domain Names all have been registered with the apparent intent to misuse the BlackRock Marks for the registrant(s)' financial gain. *Id.* ¶¶ 81-85, 90. The websites to which the domains resolve include pay-per-click advertising, malware, bloatware, and/or may be used for email services that could be employed to impersonate BlackRock. *Id.* ¶ 82. None of these domains have permission to use the BlackRock Marks, nor do they have any other legitimate interest in using the marks. *Id.* ¶¶ 86-88.

The Defendant Domain Names employ similar means to exploit the BlackRock Marks, suggesting common ownership, common goal, and/or affiliation among the registrant(s). *Id.* ¶ 93. As addressed above, the domain names all copy the marks or adopt common misspellings thereof, and/or by adding terms that reference or relate to BlackRock's services. *See id.* ¶¶ 6-49, Exs. 1-44. All have either chosen to list the registrant as being out of country, or employed a privacy service to conceal the registrant identities altogether. *See id*. The vast majority of the domains were registered within the same general timeframe (41 of the 44 domains registered since 2022, and the remaining three domains have been updated relatively recently). *See id.* And all are registered with the common purpose of using the BlackRock Marks, without BlackRock's authorization, for the registrant(s)' financial gain. *Id.* ¶¶ 80-90.

In light of the registrant(s)' concealment of their identities and/or identification as out-of-country actors, BlackRock, despite its due diligence, has been unable to find a person who would

have been a defendant in a civil action under the Anti-Cybersquatting Consumer Protection Act ("ACPA") and/or is not able to obtain *in personam* jurisdiction over the registrant(s) of the Defendant Domain Names or any other person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A).  *Id*. ¶ 52; Declaration of Adrienne J. Kosak ("Kosak Decl.," attached hereto as Attachment 1) ¶ 10. In these circumstances, the ACPA authorizes BlackRock to proceed *in rem* against the domain names. See 15 U.S.C. § 1125(d)(2)(A)(ii).

## II.     ARGUMENT

The ACPA provides for *in rem* civil actions against domain names that violate any right of the owner of a trademark, including both trademark infringement and cyberpiracy. 15 U.S.C. § 1125(d)(2)(A)(i). In such *in rem* actions, service of process shall be made by:

> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>
> (bb) publishing notice of the action as the court may direct promptly after filing the action.

*Id.* § 1125(d)(2)(A)(ii)(II).

BlackRock has complied with the requirements of subsection (aa) above. BlackRock provided the current registrant(s) of the Defendant Domain Names with notice of the alleged violations and BlackRock's intent to proceed *in rem* under the ACPA, which included a copy of Complaint. Kosak Decl. ¶¶ 7-8 and Ex. A. The notices were sent to the contact information available from the registration information for the Defendant Domain Names.[1]  *Id.* Thus, all that remains to complete service of process is the published notice as **may** be directed by the Court.

---

[1] Where the available information provided no means to contact the registrant directly, BlackRock sent the notice of alleged violations through to the domain name registrar listed in publicly available Whois records. Kosak Decl. ¶¶ 6-7 and Ex. A. This had the effect of sending the notice to the registrant(s) themselves. *See* Internet Corporation for Assigned Names and Numbers, *Temporary Specification for gTLD Registration Data*, App'x A § 2.5.1 (effective May 25, 2018) ("Registrar MUST provide an email address or a web form to facilitate email

Section 2(A)(ii)(II)(bb) of the ACPA requires an *in rem* plaintiff to provide notice of the *in rem* proceeding by "publishing notice of the action as the court may direct promptly after filing the action." This Court has, despite the discretionary language of the statute, required publication in *in rem* actions. *See Facton Ltd. v. Gstaronsale.com*, No. 1:10-cv-1165 (AJT/JFA), 2011 WL 677107, at *3 (E.D. Va. Feb. 17, 2011) (discussing the Court's conflicting interpretations of Section (bb) and concluding that publication is consistent with the principles underlying *in rem* jurisdiction). Therefore, BlackRock requests that the Court issue an order indicating that notice shall be given by a single publication in either *The Washington Post* or *The Washington Times* as set forth in the proposed Order submitted herewith. *See, e.g.*, *PragmaticPlay v. 789PragmaticPlay.com*, 1:22-cv-835 (CMH-JFA) [Doc. 6] (E.D. Va. Aug. 17, 2022); *Jewels Connection, Inc. v. OroClub.com*, 1:20-cv-364 (TSE/MSN) [Doc. 9] (E.D. Va. Apr. 14, 2020); *Stacy Plays Brands, LLC v. StacyPlays.com*, 1:20-cv-172 (LMB/TCB) [Doc. 7] (E.D. Va. Feb. 28, 2020); *Central Source LLC v. annaulcreditreports.com*, 1:20-CV-84 (LMB/IDD) [Doc. 10] (E.D. Va. Feb. 28, 2020); *K.F. Davis Engineering, Inc. v. KFDE.com*, 1:19-cv-1209 (AJT/MSN) [Doc. 6] (E.D. Va. Oct. 1, 2019); *Addicting Games, Inc. v. Addicting.com*, 1:19-cv-56 (CMH/IDD) [Doc. 9] (E.D. Va. Apr. 22, 2019); *Code-to-Learn Foundation d/b/a Scratch Foundation v. Scratch.org*, No. 1:19-cv-67 (LO/MSN) [Doc. 8] (E.D. Va. Feb. 8, 2019); *Blackshore Props., Inc. v. Eqn.com*, No. 1:18-cv-1325 (LMB/JFA) [Doc. 8] (E.D. Va. Nov. 8, 2018); *Thirsty Boy Inc. v. Thumb.com*, No. 1:17-cv-01039 (CMH/TCB) [Doc. 7] (E.D. Va. September 27, 2017); *Intercontinental Data Comms., Ltd. v. Doe*, No. 1:16-cv-613 (LMB/JFA) [Doc. 10] (E.D. Va. June 6, 2016); *Central Source LLC v. annuslcreditreport.com*,

---

communication with the relevant contact, but MUST NOT identify the contact email address or the contact itself."), *available at* https://www.icann.org/resources/pages/gtld-registration-data-specs-en/#1.

No. 1:14-cv-302 (AJT/JFA) [Doc. 8] (E.D. Va. Apr. 21, 2014); *Central Source LLC v. annualdcreditreport.com*, No. 1:14-cv-304 (LO/JFA) [Doc. 7] (E.D. Va. Apr. 21, 2014).

### III. CONCLUSION

For the reasons set forth above, BlackRock requests that this motion be granted, that the Court enter the proposed Order submitted herewith, and that the Court grant such further relief as this Court deems proper.

Dated: October 25, 2023    By:    /s/ Adrienne J. Kosak /s/
　　　　　　　　　　　　　　　　　Attison L. Barnes, III (VA Bar No. 30458)
　　　　　　　　　　　　　　　　　David E. Weslow (for *pro hac vice*)
　　　　　　　　　　　　　　　　　Adrienne J. Kosak (VA Bar No. 78631)
　　　　　　　　　　　　　　　　　WILEY REIN LLP
　　　　　　　　　　　　　　　　　2050 M St. NW
　　　　　　　　　　　　　　　　　Washington, DC 20036
　　　　　　　　　　　　　　　　　Tel: (202) 719-7000
　　　　　　　　　　　　　　　　　Fax: (202) 719-7049
　　　　　　　　　　　　　　　　　abarnes@wiley.law
　　　　　　　　　　　　　　　　　dweslow@wiley.law
　　　　　　　　　　　　　　　　　akosak@wiley.law

　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　*BlackRock, Inc.*

## **CERTIFICATE OF SERVICE**

I, Adrienne J. Kosak, hereby certify that on October 25, 2023, I electronically filed the foregoing by using the CM/ECF system. I also sent copies to the registrant(s) of the domain names through the contact information provided by the registrant to the registrar of the domain names as identified in Exhibit A to the attached declaration.

 /s/ Adrienne J. Kosak /s/
Adrienne J. Kosak (VA Bar No. 78631)
WILEY REIN LLP
2050 M Street, NW
Washington, DC  20036
Tel: (202) 719-7000
Fax: (202) 719-7049
akosak@wiley.law

*Counsel for Plaintiff*
*BlackRock, Inc.*